# Applicability of 18 U.S.C. § 219 to
# Retired Foreign Service Officers

A retired foreign service officer is not a public official of the United States subject to 18 U.S.C. § 219, which provides criminal penalties for conduct that would usually constitute a violation of the Emoluments Clause of the Constitution, Article I, § 9, cl. 8.

June 15, 1987

MEMORANDUM OPINION FOR THE LEGAL ADVISER,
DEPARTMENT OF STATE

This responds to your request for our views on the applicability of 18 U.S.C. § 219 to retired foreign service officers.[1] Section 219 provides criminal penalties for any "public official of the United States" who is required to register under the Foreign Agents Registration Act of 1938 (FARA) because he acts as an agent for a foreign principal. Essentially, § 219 provides criminal penalties for conduct that would usually constitute a violation of the Emoluments Clause of the Constitution.[2] The question is whether a retired foreign service officer should be considered a "public official of the United States" for purposes of

---

[1] This question was raised originally in a letter from a retired foreign service officer to the Office of Government Ethics (OGE). The OGE referred the letter to this Office, taking the position that it had no authority to construe this particular provision of Title 18. Although we have no specific authority to render legal opinions to private individuals, the inquiry seemed to us of sufficient general interest to the government to warrant a response. And, because the statute in question is a criminal law enforced by this Department, it seemed appropriate for us to interpret it. In the course of responding to our request for the views of the State Department on the issues involved, you requested that we do so

[2] The Emoluments Clause of the Constitution prohibits persons holding "an Office of Profit or Trust" under the United States from accepting any "Emolument, Office, or Title" from a foreign state, without the consent of Congress. U.S. Const. art. I, § 9, cl. 8. The term "emolument" has been interpreted to include compensation for employment. *See, e.g.,* 40 Op. Att'y Gen. 513 (1947). Persons prohibited from being compensated for foreign employment by the Emoluments Clause may be subject to criminal penalties under § 219 if they accept such employment, although that section, applying to conduct that would violate the FARA, is both broader and narrower than the Emoluments Clause itself It is broader in that the FARA applies to agents for foreign partnerships, corporations and private persons as well as foreign governments, *see* 22 U.S.C. § 611(b), whereas the Emoluments Clause concerns only emoluments received, in some cases indirectly, from foreign governments or officials. Section 219 is narrower in that it does not criminalize everything that would violate the Emolument Clause, such as the acceptance of a "Title" or "Office" that would not require registration under the FARA. Moreover, the categories of persons covered by the constitutional and statutory prohibitions may not be precisely coextensive, although for practical purposes they are the same.

this statute.[3] The State Department is of the view that they should not. For reasons set forth in the following paragraphs, we agree.

The question of the applicability of § 219 to retired foreign service agents arises because, historically, such individuals appear to have been considered by the Department of State to hold an "office of profit or trust" within the Emoluments Clause. If they do, they would be disabled by this provision of the Constitution from accepting employment with a foreign government, and at least arguably subject to the penalties contained in § 219 if such employment would require them to register under FARA.[4]

As far as we can determine, no court has ever considered the constitutional status of retired foreign service officers under the Emoluments Clause, or the applicability to them of § 219. The Registration Unit in the Criminal Division of this Department, which has responsibility for interpreting § 219, indicates that it is a matter of first impression. As you point out in your submission, the State Department's historical position on the applicability of the Emoluments Clause appears to have been derived from certain cases and administrative rulings dealing with the status of retired military officers as "officers of the United States."[5] It seems to have been assumed that the factual circumstances

[3] As originally enacted in 1966, § 219 applied to "an officer or employee of the United States in the executive, legislative, or judicial branch of the Government." See Pub. L. No. 89–486, § 8, 80 Stat. 244, 249. In 1984, § 219 was amended by the Comprehensive Crime Control Act to apply to "public officials of the United States." Pub. L. No. 98–473, § 1116, 98 Stat. 1837, 2149. "Public official" is defined in the amended § 219 to include Members of Congress and Delegates from the District of Columbia, as well as "any officer or employee or person acting on behalf of the United States . . . in any official function." Without more, this language on its face would not seem naturally to encompass an officer who is retired and thus no longer "acting on behalf of the United States . . . in any official function." Moreover, there is no reason to believe the 1984 change in the description of the class of persons covered by § 219 was intended to effect any change in the statute's coverage of retired foreign service officers. There is no documented legislative history that would illuminate the purpose of the change, which was added to the Crime Control bill in a joint House-Senate mark-up session after the bill had been reported out of committee in both Houses. The amendment to § 219 was not discussed on the floor. According to Criminal Division attorneys who were monitoring the Crime Control bill, the sole purpose of the amendment to § 219 was to bring Members of Congress within the section's prohibition.

[4] Our files indicate that in 1961 the State Department attempted to secure the passage of legislation to authorize retired foreign service officers to accept employment with foreign governments, subject to the approval of the Secretary of State. The State Department draft bill was explicitly premised on the assumption that the Emoluments Clause would otherwise preclude such employment. See Memorandum to Byron R. White, Deputy Attorney General from Nicholas DeB. Katzenbach, Assistant Attorney General, Office of Legal Counsel (Nov. 3, 1961). A subsequent legislative enactment gave Congress' consent to the employment of certain retired officers of the United States by foreign governments, but did not address the situation of retired foreign service officers. See Pub. L. No. 95–105, § 509(a)-(c), 91 Stat. 844, 859 (1977) (codified at 37 U.S.C. § 908) (consenting to the employment by foreign governments of retired military officers, retired Public Health Service officers, and members of the armed forces reserves). It may be, as you point out, that Congress' failure in 1977 to include retired foreign service officers among those exempted from § 219 can be attributed to the fact that by that time neither the State Department nor Congress believed that they would otherwise be subject to its provision. In light of the State Department's earlier contrary belief, however, and the potential criminal penalties involved, it seems important to settle the matter clearly one way or the other.

[5] See, e.g., United States v. Tyler, 105 U.S. 244 (1881) (retired military officer still a member of the armed forces for purposes of a statutory pay increase); Morgenthau v. Barrett, 108 F.2d 481 (D.C. Cir. 1939), cert. denied, 309 U.S. 672 (1940) (retired military officers are officers of the United States and subject to all conflict of interest laws from which they have not been exempted). The Comptroller General has taken the position that retired military officers are prohibited by the Emoluments Clause from holding employment
Continued

of retirement from the foreign service were sufficiently close to those prevailing in the military to warrant according retirees from both services similar treatment under § 219. For the reasons set forth in your submission, we agree that this assumption should be reexamined.

Under the laws establishing the terms and conditions of retirement status for foreign service officers, their situation differs in a number of important respects from that of retired military officers. Most significantly, retired military officers are subject to recall to active duty without their consent, and this obligation may be enforced by court martial under the Uniform Code of Military Justice. *See* 10 U.S.C. §§ 688, 802.[6] By contrast, according to your submission, the statutory provision authorizing recall of a retired foreign service officer, 22 U.S.C. § 3948, has never been understood to allow nonconsensual recall. There is in any event no provision for enforcing it.

While the difference in the recall status of the two classes of retirees seems to us sufficient in and of itself to justify according them different treatment under the Emoluments Clause and § 219, there is other statutory evidence of Congress' expectation that retired foreign service officers would not be regarded as on the same footing as retired military officers as far as their continuing relationship with the government was concerned. For example, unlike retired military officers, retired foreign service officers are not listed as members of the service in the pertinent provisions of the United States Code. *Compare* 10 U.S.C. § 3075 *with* 22 U.S.C. § 3903. Also, retired foreign service officers receive a retirement "annuity," while retired military officers receive "retired pay." *See* 10 U.S.C. § 1401.

Accordingly, we agree with your conclusion that a retired foreign service officer should not be regarded as holding "an Office of Profit or Trust" within the Emoluments Clause, nor, consequently, as a "public official of the United States" for purposes of 18 U.S.C. § 219.

MICHAEL A. CARVIN
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[5] (. . . continued)
with a foreign government because they are subject to being recalled to active service. *See, e.g.,* 53 Comp. Gen. 753 (1974). The legislative history of § 219 indicates an expectation that the provision might be construed to apply to retired military officers. *See* H.R. Rep. No. 1470, 89th Cong., 2d Sess. 18–19 (1966) (reproducing letter from the Department of the Navy requesting the addition of a provision specifically exempting retired military officers from § 219).

[6] It is this aspect of the status of retired military officers that has led courts to conclude that they should be considered officers of the United States even in retirement. *See United States* v. *Tyler,* 105 U.S. at 246; *supra* note 5.